EXHIBIT 1

1

**FREEBURG & GRANIERI, APC**
Gregory S. Freeburg (State Bar No. 275449)
  greg@fgfirm.law
Christy W. Granieri (State Bar No. 266392)
  christy@fgfirm.law
Anton C. Swain-Gil (State Bar No. 323237)
  anton@fgfirm.law
107 S. Fair Oaks Ave, Suite 321
Pasadena, CA 91105
Telephone: (626) 486-9082

Attorneys for Plaintiff
Erik Stentz

2

3

4

5

6

7

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**06/22/2022** at 11:25:09 AM
Clerk of the Superior Court
By Jimmy Siharath, Deputy Clerk

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

FOR THE COUNTY OF SAN DIEGO

10

11

12

13

14

15

16

17

18

ERIK STENTZ, an individual,

Plaintiff,

v.

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a corporation; and DOES 1
through 25, inclusive,

Defendants.

**Case No.**   37-2022-00024349-CU-OE-CTL

**VERIFIED COMPLAINT FOR DAMAGES:**

1.  **AGE DISCRIMINATION IN
    VIOLATION OF FEHA –
    *GOVERNMENT CODE* § 12940, *ET
    SEQ.***

2.  **DISABILITY DISCRIMINATION
    IN VIOLATION OF FEHA –
    *GOVERNMENT CODE* § 12940, *ET
    SEQ.***

3.  **FAILURE TO REASONABLY
    ACCOMMODATE A DISABILITY
    IN VIOLATION OF FEHA –
    *GOVERNMENT CODE* § 12940, *ET
    SEQ.***

4.  **FAILURE TO ENGAGE IN A
    GOOD FAITH INTERACTIVE
    PROCESS IN VIOLATION OF
    FEHA – *GOVERNMENT CODE* §
    12940, *ET SEQ.***

5.  **RETALIATION IN VIOLATION
    OF FEHA – *GOVERNMENT CODE*
    § 12940, *ET SEQ.***

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT FOR DAMAGES

6. **FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF FEHA – *GOVERNMENT CODE* § 12940, *ET SEQ.***

7. **RETALIATION IN VIOLATION OF *LABOR CODE* § 1102.5**

8. **DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO *CODE OF CIVIL PROCEDURE* § 1060; *GOVERNMENT CODE* §§ 12920 and 12920.5, ET SEQ.**

**[DEMAND FOR JURY TRIAL]**

Plaintiff Erik Stentz alleges as follows on knowledge as to himself and his own acts, and on information and belief as to all other matters:

**I.**

**PARTIES**

1. Plaintiff Erik Stentz ("Stentz" or "Plaintiff") is an individual who is employed by Defendant Government Employees Insurance Company. ("GEICO" or "Defendant"). Stentz is and was a resident of the County of Siskiyou, State of California since approximately May 2021. At all other times mentioned herein, Stentz was a resident of the County Santa Clara, State of California.

2. GEICO is, and at all times mentioned herein was, a corporation conducting business in the County of San Diego in the State of California.

3. Stentz is ignorant of the true names and capacities of Defendants sued herein as DOES 1-25, inclusive, and therefore sues these Defendants by such fictitious names. Stentz will amend this complaint to allege the true names and capacities of said Defendants when the same has been ascertained. Each of the fictitiously named Defendants is responsible in some manner for the acts complained of herein. Unless otherwise stated, all references to any named Defendant shall include the Doe Defendants as well.

///

FREEBURG&GRANIERI

4.      Each business entity of GEICO, and/or Doe Defendants 1-25, whether corporate, partnership, joint venture, unincorporated association, public entity, or other business entity of unknown form, and whether named or sued by fictitious name, is, and at all times mentioned herein was, in some manner involved in the ownership and/or operation of GEICO herein.  Each of the individual defendants, whether named or sued by fictitious name, whether acting in an individual capacity within or without his/her capacity as managerial agent, servant, employee, officer, director, partner, or joint venture of each of the business entity defendants aforementioned, in committing the acts or omissions as alleged herein which resulted in damage to Stentz, is and at all times mentioned herein was, also in some manner involved in the ownership and/or operation of GEICO, and in doing the things herein alleged was acting with the permission and consent and/or knowledge, authorization or ratification of each of the business entity defendants mentioned above, unless otherwise/ stated herein.

**II.**

**<u>VENUE</u>**

5.      Under the California Fair Employment and Housing Act ("FEHA"), "[a]n action may be brought in any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained and administered, or in the county in which the aggrieved person would have worked…but for the unlawful practice…" *Government Code* § 12965(b).  The unlawful practices giving rise to the claims in this Verified Complaint were committed, and the records relevant to the unlawful practices are maintained, in the County of San Diego.

**III.**

**<u>FACTUAL ALLEGATIONS</u>**

6.      Stentz is a 58-year-old man.

7.      GEICO is an auto insurance company whose principal business office in California is located at 14111 Danielson Street, Poway, California 92064 (the "San Diego Office").

8.      On January 29, 2007, GEICO hired Stentz as an Auto Damage Field Manager. Grade 69.  Stentz remains employed by GEICO.

FREEBURG&GRANIERI

9.      Throughout Stentz' employment with GEICO, Stentz reported to managers based out of the San Diego office.

10.      Stentz primarily worked in the Bay Area and traveled throughout California for his job.

11.      Stentz also developed and ran a GEICO office in Fremont, California (the "Fremont office").

12.      Throughout Stentz' employment with GEICO, Stentz' job performance was stellar, earning him accolades and praise from his coworkers, subordinates, and supervisors.

13.      Stentz was frequently rated as the top manager among his peers.

14.      As a result of Stentz' excellent job performance, he received several pay raises and was considered a Senior Auto Damage Field Manager.

15.      By 2015, Stentz' became a victim of GEICO's culture of discrimination and bullying.

16.      In or around May 2015, Phillip Gallimore ("Gallimore"), a Regional Auto Damage Director employed by GEICO and Stentz' supervisor, told Erik to "get up you fucking old man" in front of other employees and supervisors.

17.      Gallimore's ageist abuse of Stentz continued throughout his employment, and Gallimore referred to Stentz as an "old man" on multiple occasions.

18.      On at least two (2) occasions, Stentz told Gallimore that Stentz did not want to be referred to as an "old man" and found the term offensive.  Gallimore ignored Stentz' complaints and protests against illegal treatment.

19.      Stentz' complaints to Gallimore about his ageist comments constituted complaints of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaints were a protected activity under *Labor Code* § 1102.5. Stentz' complaints to Gallimore about his ageist comments also constituted opposition to practices forbidden under FEHA and his complaints were a protected activity under *Government Code* § 12940(h).

///

FREEBURG&GRANIERI

20. Gallimore's discriminatory conduct was not limited to Stentz. Throughout Stentz' employment with GEICO, he heard Gallimore refer to gay GEICO employees as "faggots," refer to female employees as "sluts," and state that "we need chicken and watermelon in the office" to appease Black employees.

21. Gallimore also made derogatory comments about employees taking leaves of absence, including questioning why employees needed a leave of absence and stating that when their leave runs out, GEICO could terminate them.

22. GEICO maintains a policy and practice of requiring supervisors to provide their subordinates with performance evaluations at least annually.

23. GEICO uses the performance evaluations to determine whether an employee should receive a pay raise.

24. When Gallimore was Stentz' immediate supervisor, Gallimore failed to provide Stentz a performance evaluation for several years, thereby sabotaging Stentz' chances for receiving a raise.

25. Stentz complained to GEICO's Human Resources Department about Gallimore's failure to provide Stentz with the company-required performance evaluations. Stentz was told only that GEICO's Human Resources Department would speak to Gallimore. However, nothing was done and Stentz did not receive the company-required performance evaluation.

26. Gallimore failed to provide Stentz with performance evaluations knowing that it would sabotage Stentz' ability to receive a pay raise because Gallimore believed Stentz is too old to do his job.

27. In or around June 2018, GEICO announced that Brian Wright ("Wright"), a Regional Auto Damage Director employed GEICO, was taking over for Gallimore and that Wright would be Stentz' immediate supervisor going forward.

28. Wright did not take over from Gallimore until approximately October 2018, and Gallimore continued to interfere with Stentz' work after his removal as Stentz' immediate supervisor.

///

FREEBURG&GRANIERI
A CIVIL LITIGATION LAW FIRM

29.     By approximately December 2018, GEICO's Human Resources Department received several complaints about Gallimore's inappropriate and discriminatory conduct.

30.     In or around December 2018, Irene Citron ("Citron"), a Human Resources Manager employed by GEICO at the time, conducted an investigation into Gallimore's conduct and interviewed Stentz about his dealings with Gallimore.

31.     Stentz told Citron that Gallimore called Stentz an "old man" several times, that Gallimore made discriminatory remarks towards other employees, and that Gallimore was a bully.

32.     Stentz' complaint to Citron about Gallimore's discriminatory remarks constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' complaint to Citron about Gallimore's discriminatory remarks also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

33.     Citron told Stentz that GEICO would respond appropriately and that, in any case, Gallimore would no longer be Stentz' immediate supervisor.

34.     In or around December 2018, Stentz also told Wright that Gallimore was still taking on supervisory duties that belonged to Wright, that Gallimore called Stentz an "old man" several times, that Gallimore made discriminatory remarks towards other employees, and that Gallimore was a bully.

35.     Stentz' complaint to Wright about Gallimore's discriminatory remarks constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' complaint to Wright about Gallimore's discriminatory remarks also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h)

36.     As part of GEICO's investigation into Gallimore, other GEICO managers and human resources professionals interviewed Stentz.  Stentz told them that that Gallimore called Stentz an "old man" several times, that Gallimore made discriminatory remarks towards other

FREEBURG&GRANIERI

1    employees, and that Gallimore was a bully.

2        37.    Stentz complaints to other GEICO managers and human resources professionals

3    about Gallimore's discriminatory remarks constituted complaints of a violation of a state or

4    federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and

5    the complaints were a protected activity under *Labor Code* § 1102.5.  Stentz' complaints to other

6    GEICO managers and human resources professionals about Gallimore's discriminatory remarks

7    also constituted opposition to practices forbidden under FEHA and his complaints were a

8    protected activity under *Government Code* § 12940(h).

9        38.    Gallimore continued to bully Stentz, and ostracized and ignored him, after he

10   complained about Gallimore's discriminatory conduct.

11       39.    Gallimore's conduct constituted discrimination against Stentz on the basis of his

12   age and in retaliation for Stentz' complaints about Gallimore's discriminatory conduct.

13       40.    In or around December 2018, as part of GEICO's investigation into Gallimore,

14   Citron and LaDonna Bond ("Bond"), a GEICO Human Resources Manager at the time,

15   interviewed Ryan Ness ("Ness"), a Regional Auto Damage Manager employed by GEICO at the

16   time.

17       41.    Citron and Bond told Ness that the interview would remain confidential and asked

18   him to respond to their questions truthfully.

19       42.    Citron and Bond asked Ness whether he had ever heard Gallimore refer to Stentz as

20   an "old man" and if Ness ever heard Gallimore use racist language.  Ness confirmed that he had.

21       43.    In or around December 2018, approximately one (1) week after Citron and Bond

22   interviewed Ness, Gallimore told Ness that Gallimore heard what Ness said during the interview,

23   despite Gallimore being the subject of the investigation and Citron and Bond telling Ness that the

24   interview was confidential.

25       44.    In or around December 2018, approximately one (1) week after Citron and Bond

26   interviewed Ness, Martha Furnas ("Furnas"), a Regional Vice President employed by GEICO at

27   the time, called Ness into Furnas' office and told him "I saw that you attempted to be truthful

28   during the interview while trying to assist your peer and friend Mr. Stentz."

45.     Furnas told Ness that his association with Stentz, who would be "out soon," was damaging to Ness' career and would hurt his reputation.

46.     Furnas told Ness that he already had a bad reputation and that it was "not wise attaching yourself to someone who won't be here long," in reference to Stentz.

47.     In or around January 2019, in anticipation of a brief planned medical leave of absence Stentz was taking in or around February 2019, and in apparent disregard of the mounting complaints against him, Gallimore told Wright that "the old man is taking time off, you better keep an eye on him," in reference to Stentz.

48.     In or around January 2019, Troy Penry ("Penry"), an Assistant Vice President employed by GEICO, traveled to the Fremont office to meet with Stentz to discuss his and other employees' complaints about Gallimore.

49.     Stentz told Penry that Gallimore called Stentz an "old man" several times, that Gallimore made discriminatory remarks towards other employees, and that Gallimore was a bully.

50.     Stentz complaint to Penry about Gallimore's discriminatory remarks constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' complaint to Penry about Gallimore's discriminatory remarks also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

51.     Penry told Stentz that GEICO had "grave concerns" about Gallimore and that GEICO would "do the right thing."

52.     Stentz is unaware of any meaningful disciplinary actions taken by GEICO against Gallimore, who retained his position and continued his discriminatory and inappropriate conduct.

53.     In or around February 2019, Furnas and Penry traveled to the Fremont office.

54.     In or around February 2019, Furnas told Stentz that Furnas heard that Stentz made a complaint about Gallimore.

55.     Stentz told Furnas and Penry that Gallimore made offensive and ageist comments towards Stentz, and that Gallimore had bullied Stentz and other employees.

FREEBURG&GRANIERI

56.     Stentz' complaint to Furnas and Penry about Gallimore's discriminatory remarks constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' complaint to Furnas and Penry about Gallimore's discriminatory remarks also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

57.     On or around February 7, 2019, Bond and Wright issued Stentz a disciplinary memo for an alleged overdraft authority error, which constitutes a technical violation under GEICO policy.

58.     Stentz responded to Bond and Wright regarding the February 7, 2019 disciplinary memo with a written rebuttal claiming that he was inappropriately disciplined for an error he did not commit and discussed the allegations against him with Penry and GEICO's Human Resources Department.

59.     Neither Bond nor Wright followed up with Stentz to discuss his rebuttal to the February 7, 2019 disciplinary memo, which, pursuant to GEICO policy, meant that his rebuttal had been accepted and that the disciplinary memo was rescinded.

60.     Stentz confirmed that his February 7, 2019 disciplinary memo was rescinded with Citron and Wright, who told Stentz that the issue was "closed."

61.     Stentz received the disciplinary memo on or around February 7, 2019 in retaliation for complaining about Gallimore discriminatory conduct.

62.     On or around March 20, 2019, Stentz flew to San Diego, California to attend a team meeting at the San Diego office.

63.     During the March 20, 2019 meeting, Stentz told Greg Jacobi ("Jacobi"), an Assistant Vice President employed by GEICO, that it was his turn to speak and asked him questions about their team.

64.     Jacobi became upset at Stentz' innocent comments and left the room.

///

///

65. At approximately 10:30 a.m., Wright excused Stentz from the meeting so that Stentz could retrieve his luggage from the airport, which the airlines had lost on Stentz' flight down to San Diego.

66. At approximately 12:00 p.m., while Stentz was retrieving his belongings from the airport, Bond called Stentz and accused him of "stomping out" of the meeting.

67. Bond told Stentz that he was not allowed back in the San Diego office and that Bond would tell Stentz when he could return.

68. On or around March 20, 2019, shortly after Stentz received Bond's call, Ness called Stentz and told him that Bond and another human resource professional were investigating Stentz, interviewing his coworkers, and trying to get his coworkers to "say bad things" about Stentz.

69. Ness told Stentz that Bond interviewed Ness and stated that "we have a big problem" about Stentz.

70. Ness also told Stentz that Bond asked Stentz leading questions about Stentz in an effort to discredit him.

71. On or around the afternoon of March 20, 2019, Bond called Stentz and told him to return to the San Diego office.

72. Upon Stentz' arrival, he was met by Bond and Furnas who were enraged and began berating Stentz.

73. Bond and Furnas accused Stentz of acting unprofessionally and of slamming the door on his way out of the meeting earlier that day, even though Stentz had not slammed the door and was explicitly excused from the meeting by Wright.

74. Furnas told Stentz, "who will hire you, look at you," "you will make a decision to resign now, or I will fire you going forward," "you suck," and called him an "old man."

75. Bond also accused Stentz of having "white privilege."

76. After berating Stentz for over two (2) hours, Furnas kicked Stentz out of the San Diego office and had him escorted off the premises.

///

FREEBURG & GRANIERI

77.     On the evening of March 20, 2019, Stentz wrote an email to Bond explaining Stentz' version of events at the meeting earlier that day and why he felt it was inappropriate to have been treated so harshly by Bond and Furnas.

78.     In his March 20, 2019 email, Stentz complained about having been threatened and referred to as an "old man."  Stentz also stated that "I continue to feel uncomfortable with the requirement to be present at meetings with the same Director who I and other witness associates filed a truthful complaint without any communicated remedy going forward for the hostile environment we experienced" [sic].

79.     A true and correct copy of Stentz' March 20, 2019 email to Bond is attached hereto, marked as **Exhibit "A,"** and by this reference incorporated herein.

80.     Stentz' March 20, 2019 email to Bond constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' March 20, 2019 email to Bond also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

81.     On or around March 21, 2019, Bond, Citron, and Wright ordered Stentz to report to the San Diego office.

82.     On or around March 21, 2019, Bond, Citron, and Wright issued Stentz a written warning that accused him of acting unprofessionally.

83.     On or around March 21, 2019, Stentz told Citron, Bond, and Wright that Stentz disagreed, that he had provided Bond a rebuttal to the criticisms against him, and that he was entitled to a formal response.

84.     Stentz never received a formal response to his March 20, 2019 rebuttal email.

85.     On or around March 22, 2019, Stentz told Citron, among other things, that the written warning Stentz received on or around March 21, 2019 was inappropriate, that Furnas and Bond had berated Stentz, that Furnas had insulted Stentz and called him an "old man," and that Furnas had kicked Stentz out of the San Diego office.

///

86.     Stentz' complaint to Citron about Furnas and Bond's discriminatory conduct constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' complaint to Citron about Furnas and Bond's discriminatory conduct also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

87.     On or around March 22, 2019, Citron told Stentz that she heard about what happened, that it was terrible, that GEICO does not operate that way, and that she had alerted GEICO executives about the incident.

88.     In or around late April 2019, Stentz told Jacobi that Stentz was sorry if there had been an unintended miscommunication between the two at the March 20, 2019 meeting at the San Diego office and asked Jacobi about the status of Stentz' March 21, 2019 written warning since he had not heard anything further.

89.     Jacobi told Stentz that the issue was "over" and that the matter was "closed."

90.     Stentz understood Jacobi's comments, and the lack of follow up regarding his March 21, 2019 written warning to mean that the written warning was rescinded.

91.     Pursuant to GEICO's policies and practices, when an employee receives a written warning, the written warning is factored into the employee's annual performance evaluation.

92.     The only reference to Stentz' March 21, 2019 written warning in his 2019 performance evaluation completed by Wright was that "[w]hile 2019 did produce a Warning in March, there have been no other circumstances that have surfaced related to the substance of that document and therefore it will not impact his PA."

93.     A true and correct copy of Stentz' 2019 performance evaluation is attached hereto, marked as **Exhibit "B,"** and by this reference incorporated herein.

94.     In or around May 2020, Stentz was diagnosed with a psychological disorder.

95.     Stentz' psychological disorder constitutes a mental disability within the meaning of *Government Code* § 12926(j) because he suffers from an emotional and/or mental illness that limits the major life activity of working.

96.     As an accommodation for his mental disability, Stentz required brief leaves of absence and the ability to take up to approximately one (1) day a week off from work in the event of a flareup of his psychological disorder.

97.     In or around May 2020, Stentz' submitted a request for accommodation for his psychological disorder, specifically the ability to take up to approximately one (1) day a week off from work in the event of a flareup of his psychological disorder, to GEICO's Human Resources Department.   Stentz' request was granted.

98.     Between approximately May 2020 and May 2021, Stentz took several medical leaves of absences due to his psychological disorder, which were nominally approved by GEICO and/or its third-party administrator.

99.     In or around 2020, Jaclyn Salt ("Salt"), a Human Resources Compliance Specialist employed by GEICO, and Sara Boster ("Boster"), a Leave Administrator employed by GEICO, were in charge of processing Stentz' leave requests.

100.    In or around 2020, during meetings in which Stentz' requests for leaves of absence due to his psychological disorder were discussed, Salt and Boster regularly referred to Stentz as "crazy," and Bond referred to Stentz as "problematic."

101.    In or around May 2020, GEICO reassigned Gallimore as Stentz' immediate supervisor once again.

102.    In or around May 2020, Stentz complained to Bond, who by that time was promoted to the position of Human Resources Director, and James Jones ("Jones"), an Assistant Vice President employed by GEICO, about Gallimore's reassignment as Stentz' immediate supervisor.

103.    In or around May 2020, Stentz told Bond and Jones, among other things, that Stentz had previously complained about Gallimore, that Gallimore had bullied Stentz and other employees, that Gallimore had made discriminatory remarks against other employees, that Gallimore had called Stentz an "old man" on several occasions, and that it was inappropriate to make Gallimore Stentz' immediate supervisor in light of these facts and history of Stentz' complaints against Gallimore and participation in investigations against Gallimore.

FREEBURG&GRANIERI

104. Stentz' complaint to Bond and Jones about Gallimore's discriminatory conduct constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5. Stentz' complaint to Bond and Jones about Gallimore's discriminatory conduct also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

105. Jones told Stentz that Jones had Gallimore's personnel file and that there was no record of Stentz or any other employees' complaints about Gallimore.

106. Stentz was dumbfounded and asked Bond how that was possible, when she was personally aware of Stentz' complaints and GEICO's investigation into Gallimore's conduct.

107. Bond laughed and told Stentz that there was nothing in Gallimore's personnel file.

108. Stentz immediately realized that Bond had scrubbed Gallimore's personnel file and was lying about her knowledge of Stentz and others' complaints about Gallimore.

109. Bond and Jones ignored Stentz' concerns and he was forced to remain as Gallimore's immediate subordinate.

110. In or around 2011, Stentz was rear ended while working and suffered a broken neck that required a disk replacement surgery.

111. In or around June 2018, Stentz broke his back and continues to suffer from back pain.

112. As a result of Stentz' back injuries, he requires ergonomic accommodations, particularly when he is driving.

113. Stentz' back injuries constitute a physical disability within the meaning of *Government Code* § 12926(m) because he suffers from a physiological disorder and/or condition that affects his musculoskeletal system and limits the major life activity of working.

114. Throughout approximately 2018, 2019, and 2020, Stentz asked Karina Sanchez ("Sanchez"), a Fleet Manager employed by GEICO who was in charge of assigning company vehicles to employees working in the field, for ergonomic vehicles and seating.

///

FREEBURG&GRANIERI

115. Sanchez denied Stentz' requests, and Stentz was forced to use his own vehicle for work and buy his own ergonomic chairs.

116. In or around 2020, Collen Moore ("Moore"), a Nurse employed by GEICO, told Christina Burke ("Burke"), an employee in GEICO's Human Resources Department, that Stentz required a work vehicle with ergonomic seats, that GEICO refused to provide Stentz with a work vehicle with ergonomic seats, and that "what they are doing is wrong."

117. According to GEICO policy, employees in the field are required to stay within a 250 mile radius of their assigned work area, but the policy is rarely enforced.

118. In or around late 2020, Gallimore told Stentz that Sanchez accused Stentz of having travelled outside of the applicable 250 mile radius from his work location.

119. Gallimore told Stentz that it was not an issue, but that Gallimore had to respond to Sanchez.

120. Stentz asked Gallimore if all GEICO managers were subjected to that level of scrutiny, to which Gallimore responded that they were not.

121. Stentz told Gallimore that it felt like Sanchez was singling Stentz out.

122. In or around late 2020, without Stentz' consent, and in order to create problems for him, Gallimore told Bond that Sanchez was harassing Stentz.

123. On or around February 3, 2021, Kathleen Nunez ("Nunez"), a Human Resources Supervisor employed by Geico, and Lindsay Brackpool ("Brackpool"), a Senior Compliance Specialist employed by GEICO, called Stentz and told him that Gallimore had reported that Sanchez was harassing Stentz.

124. Nunez and Brackpool told Stentz that they were also investigating widespread complaints about Sanchez' job performance and asked Stentz to provide a confidential statement about his interactions with Sanchez. Nunez and Brackpool assured Stentz that he could speak freely.

125. During the February 3, 2021 phone call between Stentz, Nunez, and Brackpool, Stentz told Nunez and Brackpool that Stentz did not believe that Sanchez was harassing Stentz, but that he felt that Sanchez was at times incompetent at her job, had singled Stentz out for

FREEBURG&GRANIERI

1  traveling outside of his applicable 250 mile radius, and had failed to approve ergonomic vehicles

2  for Stentz in the past.

3    126.    Stetnz complaint to Nunez and Brackpool about Sanchez' refusal to provide Stentz

4  with ergonomic vehicles constituted a complaint of a violation of a state or federal statute, or a

5  violation or noncompliance with a local, state, or federal rule or regulation and the complaint was

6  a protected activity under *Labor Code* § 1102.5.  Stentz' complaints to Nunez and Brackpool

7  about Sanchez' refusal to provide Stentz with ergonomic vehicles also constituted opposition to

8  practices forbidden under FEHA and his complaint was a protected activity under *Government*

9  *Code* § 12940(h).

10    127.    During the February 3, 2021 phone call, Nunez and Brackpool asked Stentz leading

11  questions in an attempt to find fault with Sanchez' performance.

12    128.    In or around February 2021, shortly after Stentz' phone call with Nunez and

13  Brackpool, Stentz' medical provider placed him on a medical leave of absence due to his mental

14  disability through approximately May 6, 2021.  GEICO approved Stentz' leave request as an

15  accommodation for his mental disability through its third-party administrator, The Hartford.

16    129.    While Stentz was on leave, he asked Bond and Jones for a transcript or notes from

17  his conversation with Nunez and Brackpool regarding Sanchez.  Both Bond and Jones refused.

18    130.    While Stentz was on leave, he emailed his doctor's notes, and forwarded his

19  communications with The Hartford, to Bond and Gallimore.  Both Gallimore and Bond responded

20  to Stentz with disdain and asked him why he was sending the information to them.

21    131.    In or around April 2021, Gallimore called Stentz while he was on his medical leave

22  of absence and told him that Gallimore spoke to Bond and she stated that Stentz had to return to

23  work immediately or he would be issued a warning or terminated.

24    132.    Stentz was shocked and told Gallimore that Stentz had documentation of his need

25  for a medical leave of absence and that his medical leave of absence was approved by The

26  Hartford.

27  ///

28  ///

VERIFIED COMPLAINT FOR DAMAGES

15

FREEBURG&GRANIERI

133.    Stentz told Gallimore that asking an employee to return to work prior to the conclusion of their approved leave of absence was against GEICO policy and asked him to explain the deviation.

134.    Stentz complaint to Gallimore about being required to prematurely return from Stentz' approved medical leave of absence constituted a complaint of a violation of a state or federal statute, or a violation or noncompliance with a local, state, or federal rule or regulation and the complaint was a protected activity under *Labor Code* § 1102.5.  Stentz' complaint to Gallimore about Stentz being required to prematurely return from Stentz' approved medical leave of absence also constituted opposition to practices forbidden under FEHA and his complaint was a protected activity under *Government Code* § 12940(h).

135.    In or around April 2021, during Gallimore and Stentz' phone call, Gallimore told Stentz that the deviation was "just for you" and that if Stentz did not report to work the following day, Gallimore would report Stentz as a no-show and begin the warning or termination process.

136.    Against his medical provider's advice, and because he feared losing his job, Stentz returned to work the following day.

137.    In or around April 2021, shortly after Stentz returned to work, Brackpool asked Stentz for a written statement regarding Sanchez.

138.    Stentz told Brackpool that he did not have a problem with Sanchez and did not want to be involved in her investigation further, but Brackpool told Stentz "that is not what [Bond] wants."

139.    Stentz asked Brackpool for a record of Stentz' comments during their February 3, 2021 phone call, but Brackpool refused.

140.    On May 20, 2021, Bond and Jones called Stentz to tell him that Stentz would receive a disciplinary memo.

141.    According to GEICO's policies and practices, disciplinary actions are typically taken and given by an employee's immediate supervisor, so Stentz was surprised that Jones was participating in the disciplinary action instead of Gallimore.

///

142.   On May 20, 2021, Bond and Jones accused Stentz of behaving unprofessionally and treating Sanchez inappropriately.

143.   Bond and Jones told Stentz that this disciplinary action was taken, in part, due to Stentz' prior disciplinary actions he received on February 7, 2019 and March 21, 2019.

144.   Stentz told Jones and Bond that his February 7, 2019 and March 21, 2019 disciplinary actions were over two (2) years old and had been rescinded.

145.   Neither Jones nor Bond explained why the February 7, 2019 and March 21, 2019 disciplinary actions were relevant to their present concerns.

146.   Stentz realized that Jones and Bond were using false prior disciplinary actions, which were tainted with discriminatory animus, to punish him for taking a medical leave of absence.

147.   That was confirmed when Bond abrasively told Stentz that he "had a lot of time off, for stress," and accused him of having been paid his regular wages for some of the time he was on leave, despite Stentz having no control over payroll.

148.   According to GEICO's policies and practices, an employee cannot be demoted to a position that they have never held, as it would set that employee up for failure.

149.   On May 20, 2021, Bond and Jones told Stentz that he was demoted from Senior Auto Damage Manager, Grade 69 to an Auto Damage Adjuster, Grade 65 and that his salary was accordingly reduced.

150.   GEICO employs a progressive discipline policy whereby employees receive a performance improvement plan, an action plan, a warning, and finally termination or demotion.

151.   GEICO failed to follow its own progressive discipline policy with respect to Stentz by demoting him before taking the preliminary steps in its progressive discipline policy.

152.   On May 20, 2021, approximately thirty (30) minutes after Stentz' unlawful demotion, Gallimore sent a group text to several GEICO employees stating that Stentz had been demoted, in an attempt to humiliate him further.

153.   On or around May 20, 2021, after Jones and Bond called Stentz, Bond and Jones sent Stentz a written disciplinary memo, which stated:

FREEBURG&GRANIERI

"As a member of management, your responsibilities include effective leadership, communication, and support which fosters a productive work environment. We must be confident that our leaders will act in ways that are consistent with these requirements in all aspects of their work. Associates in a leadership role are instrumental in maintaining a fair workplace; one which is free of disrespect, harassment, and intimidation through the example they set and adhering to all company policies. The GEICO Code of Conduct lays out the standards of professional conduct, which includes the following: *Maintain an atmosphere of mutual respect by and for all associates and applicants. Associate behavior must be professional, courteous and friendly and not create what a reasonable person would consider to be an intimidating, hostile or offensive work environment to each other and to our internal and external customers*. As a member of management, you should be setting an unfailing example of following these principles for others to follow.

There have been previous concerns brought to my attention about your leadership and behavior that do not meet the standards outlined above. Your actions resulted in a Memo to your file issued on February 7, 2019, and in a separate occurrence an ongoing Warning issued and signed by you on March 21, 2019.

We recently completed two investigations that were initiated as a result of associate complaints about your conduct and interactions. I acknowledge that you disagree with some of the concerns expressed by these associates; however, the items listed below were corroborated by others or by written verification:

- You submitted a towing expense in December 2020 and under the description for the expense, you listed 'FLEET MANAGER FAILURE > CO CAR TOWED AS A RESULT>'.

- During a recent related interview with our HR Supervisor and Senior Compliance Specialist on February 3, 2021 you made the following statements:

1        o  'You have to be intelligent enough to cypher it out. When she [Karina]

2            sends the list out, it's wrong.'

3        o  'How hard is it, Karina? Know your job.'

4        o  'She works half day she's often a little tyrant.'

5        o  'I'm 260 miles away… whatever. It's none of your business, Karina.'

6        o  'Honey, if you want to take a shot at me, you're going to need a little more

7            than a spit wad. I'm a moving target and hard to kill. She's a joke.'

8        o  'She's just a fly in the ointment. We're dealing with all kinds of stuff.

9            She's just a pain.'

10   Related to another investigation, there was a concern regarding your interactions

11   towards a customer service representative for one of our business partners, The

12   Hartford. During a recent call with The Hartford on March 2, 2021, your behavior

13   toward the representative was documented and described as combative, sarcastic,

14   and hostile. This was confirmed through the call recording.

15   Both investigations confirmed a lack of professionalism that is not consistent with

16   our requirements for all associates and especially for members of management.

17   Furthermore, these instances violate both our GEICO Code of Conduct and the

18   ongoing Warning administered and signed by you on March 21, 2019. For those

19   reasons, I do not have the confidence that you can remain in a leadership role.

20   Effective May 22, 2021, we will reclassify you to an Auto Damage Adjuster,

21   Grade 65, and your new salary will be $98,473.05."  (emphasis in original).

22       154.  A true and correct copy of the May 20, 2021 disciplinary memo is attached hereto,

23   marked as **Exhibit "C,"** and by this reference incorporated herein.

24       155.  The May 20, 2021 disciplinary memo constituted illegal pretext to demote Stentz.

25       156.  The February 7, 2019 and March 21, 2019 disciplinary actions identified in the

26   May 20, 2021 disciplinary memo were over two (2) years old and despite the language of the May

27   20, 2021 disciplinary memo, had in fact been rescinded and were not "ongoing."

28   ///

FREEBURG&GRANIERI

157.    The February 7, 2019 and March 21, 2019 disciplinary actions Stentz received were themselves issued in retaliation for Stentz opposing discrimination in the workplace and were tainted with discriminatory animus.

158.    Jones and Bond's concern with Stentz' December 2020 towing expense report was also unfounded.

159.    In December 2020, Sanchez failed to keep track of a GEICO vehicle that was parked in a time-limited area.  As a result, the vehicle was towed and Stentz was forced to pay an impound fee to retrieve the vehicle.

160.    In or around December 2020, Gallimore specifically directed Stentz to submit an expense report for the impound fee he was forced to pay, and later approved the expense report Stentz submitted that contained the language Bond and Jones found offensive.

161.    In or around December 2020, to sabotage Stentz further, Gallimore then reported to GEICO's Human Resources Department that Stentz had submitted the expense report incorrectly or inappropriately.

162.    The out-of-context statements Stentz made about Sanchez cited in the May 20, 2021 disciplinary memo were obtained as part of an investigation into Sanchez' poor performance and were not said directly to Sanchez.

163.    On February 3, 2021, Nunez and Brackpool asked Stentz leading questions in an effort to make him say negative things about Sanchez, did not tell him that he was speaking inappropriately at the time, and explicitly told Stentz that his statement would remain confidential and that he could speak freely.

164.    On April 30, 2021, Stentz received an email from a representative of The Hartford in which the representative apologized for becoming frustrated with Stentz on the phone and for behaving unprofessionally, demonstrating that Stentz was not at fault for the interaction with The Hartford cited in the May 20, 2021 disciplinary memo.

165.    On or around May 20, 2021, shortly after Stentz received news of his demotion, he was seriously injured while working in the field and has been on a medical leave of absence ever since.

VERIFIED COMPLAINT FOR DAMAGES
20

FREEBURG&GRANIERI

166.    The stated reason for Stentz' demotion was illegal pretext.  Stentz was demoted, in whole or in part, because he is over 40-years-old, and/or because he suffered from a known disability, and/or because he requested reasonable accommodations, and/or because he used an accommodation when he took protected medical leaves of absence.  Stentz was also demoted, in whole or in part, in retaliation for complaining about unlawful discrimination in the workplace.

167.    As a result of GEICO's unlawful conduct, as set forth in this Verified Complaint, Plaintiff has suffered and continues to suffer economic damages and other damages which will be proved at the time of trial.  Additionally, Plaintiff has been emotionally damaged by GEICO's unlawful conduct.

## IV.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

168.    Prior to the institution of this lawsuit, Stentz filed a complaint with the Department of Fair Employment and Housing ("DFEH"), pursuant to § 12900, *et seq.* of the *Government Code*, alleging that the acts described in this Complaint violated the Fair Employment and Housing Act, *Government Code* § 12940, *et seq*. ("FEHA").  On December 20, 2021, the DFEH issued a "right to sue" letter, a true and correct copy of which is attached hereto, marked as **Exhibit "D"** and by this reference incorporated herein.  All conditions precedent to the institution of this lawsuit have been fulfilled.  This action is filed within one (1) year of the date the DFEH issued its right to sue letter.

## V.

## FIRST CAUSE OF ACTION

## AGE DISCRIMINATION IN VIOLATION OF FEHA –

## *GOVERNMENT CODE* § 12940, *ET SEQ.*

## (Against Defendants GEICO and DOES 1-25)

169.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Verified Complaint as if fully alleged herein.

///

///

FREEBURG&GRANIERI

170.    Defendants GEICO and/or DOES 1-25 are each subject to the laws of the State of California and are entities subject to suit under FEHA for discrimination in that each of these Defendants is an employer who regularly employs five (5) or more persons.

171.    At all relevant times mentioned herein, Plaintiff was over forty (40) years old.

172.    *Government Code* § 12940(a) makes it illegal "[f]or an employer, because of…age…to discriminate against the person in compensation or terms, conditions, or privileges of employment."

173.    Pursuant to *Government Code* § 12926(b), "'[a]ge' refers to the chronological age of any individual who has reached a 40th birthday."

174.    Defendants GEICO and/or DOES 1-25 discriminated against Plaintiff on the basis of his age in violation of *Government Code* § 12940 by engaging in such discriminatory actions against Plaintiff as described above, including, but not limited to:

a.      Gallimore's ageist comments towards and about Plaintiff;

b.      Refusing to provide Plaintiff performance evaluations for several years;

c.      Refusing to provide Plaintiff pay raises as a result of GEICO's failure to provide him performance evaluations;

d.      Gallimore bullying, ostracizing, and ignoring Plaintiff;

e.      Failing to maintain confidentiality regarding Ness' comments during his interview with Citron and Bond;

f.      Furnas telling Ness that his association with Plaintiff was damaging to his career and reputation;

g.      Gallimore's comment to Wright that "the old man is taking time off, you better keep an eye on him," in reference to Plaintiff;

h.      Ignoring Plaintiff's complaints about the discrimination to which he and other employees were subjected;

i.      Failing to take appropriate disciplinary action against Gallimore;

j.      Retaliating against Plaintiff for complaining about unlawful discrimination in the workplace;

k.     Issuing Plaintiff the February 7, 2019 disciplinary memo;

l.     Encouraging Plaintiff's coworkers to disparage him;

m.     Bond and Furnas berating Plaintiff;

n.     Furnas calling Plaintiff an "old man";

o.     Issuing Plaintiff the March 21, 2019 warning;

p.     Forcing Plaintiff to work under Gallimore;

q.     Forcing Plaintiff to return from a medical leave of absence prematurely;

r.     Threatening to discipline or terminate Plaintiff if he did not return from a medical leave of absence prematurely;

s.     Scrubbing Gallimore's file of Plaintiff and other employees' complaints against Gallimore;

t.     Gallimore claiming that Sanchez was harassing Plaintiff in order to make problems for him;

u.     Encouraging Plaintiff to make negative comments against Sanchez that were later used against Plaintiff;

v.     Using over two (2) year old disciplinary actions that were rescinded and tainted with discriminatory animus to justify demoting Plaintiff;

w.     Issuing Plaintiff the May 20, 2021 disciplinary memo;

x.     Failing to follow GEICO's progressive discipline policy with respect to Plaintiff;

y.     Gallimore advertising Plaintiff's demotion in an effort to humiliate him;

z.     Giving false and pretextual reasons for demoting Plaintiff;

aa.    Demoting Plaintiff; and

bb.    By all other conduct alleged above.

175.    Plaintiff's age was a motivating reason for Defendants GEICO and/or DOES 1-25's disparate and discriminatory treatment of Plaintiff.

176.    As a direct and proximate result of the conduct of Defendants GEICO and/or DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has

also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in excess of $500,000.

177.    Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and malicious manner with the express intent of injuring or damaging Plaintiff or with conscious disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and exemplary damages against Defendants in a sum appropriate to punish and make an example of Defendants.

178.    The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25 had advance knowledge of the unfitness of employees and/or agents, who acted with malice, oppression, or fraud and employed them with a conscious disregard of the rights or safety of Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice was committed by or on the part of an officer, director, or managing agent of Defendants GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate to punish and make an example of Defendants GEICO and/or DOES 1-25.

179.    FEHA provides for an award of reasonable attorneys' fees and costs incurred by the prevailing party in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs under *Government Code* § 12965(b).

180.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

FREEBURG&GRANIERI

# VI.

## SECOND CAUSE OF ACTION

### DISABILITY DISCRIMINATION IN VIOLATION OF FEHA –

### *GOVERNMENT CODE* § 12940, *ET SEQ.*

### (Against Defendants GEICO and DOES 1-25)

181.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Verified Complaint as if fully alleged herein.

182.     Defendants GEICO and/or DOES 1-25 are each subject to the laws of the State of California and are entities subject to suit under FEHA for discrimination in that each of these Defendants is an employer who regularly employs five (5) or more persons.

183.     At all relevant times, Plaintiff was an employee of GEICO with a mental disability within the definition of *Government Code* § 12926(j), because he suffered from a mental or psychological disorder or condition that limits the major life activity of working, and/or was regarded or treated by Defendants GEICO and/or DOES 1-25 as an employee with a protected mental disability that limits the major life activity of working and is covered by FEHA.

184.     Plaintiff was a qualified individual with a mental disability who could perform the essential functions of his job, with or without a reasonable accommodation, and without endangering his own health or safety or the health and safety of others.

185.     Defendants GEICO and/or DOES 1-25 learned of Plaintiff's mental disability at the latest in or around May of 2020, when he submitted a request for accommodations for his mental disability to GEICO.  Defendants GEICO and/or DOES 1-25 remain aware of Plaintiff's mental disability through the present.

186.     Defendants GEICO and/or DOES 1-25 discriminated against Plaintiff on the basis of his mental disability in violation of *Government Code* § 12940 by engaging in such discriminatory actions against Plaintiff as described above, including, but not limited to:

a.     Gallimore's negative comments about employees taking leaves of absence;

b.     Gallimore bullying, ostracizing, and ignoring Plaintiff;

///

c.   Ignoring Plaintiff's complaints about the discrimination to which he and other employees were subjected;

d.   Failing to take appropriate disciplinary action against Gallimore;

e.   Forcing Plaintiff to work under Gallimore;

f.   Retaliating against Plaintiff for complaining about unlawful discrimination in the workplace;

g.   Forcing Plaintiff to return from a medical leave of absence prematurely;

h.   Threatening to discipline or terminate Plaintiff if he did not return from a medical leave of absence prematurely;

i.   Scrubbing Gallimore's file of Plaintiff and other employees' complaints against Gallimore;

j.    Gallimore claiming that Sanchez was harassing Plaintiff in order to make problems for him;

k.   Encouraging Plaintiff to make negative comments against Sanchez that were later used against Plaintiff;

l.   Using over two (2) year old disciplinary actions that were rescinded and tainted with discriminatory animus to justify demoting Plaintiff;

m.   Issuing Plaintiff the May 20, 2021 disciplinary memo;

n.   Bond's abrasive comment that Plaintiff "had a lot of time off, for stress";

o.   Bond's comment that Plaintiff was "problematic";

p.   Boster and Salt referring to Plaintiff as "crazy";

q.   Failing to follow GEICO's progressive discipline policy with respect to Plaintiff;

r.   Gallimore advertising Plaintiff's demotion in an effort to humiliate him;

s.   Giving false and pretextual reasons for demoting Plaintiff;

t.   Demoting Plaintiff; and

u.   By all other conduct alleged above.

///

///

FREEBURG&GRANIERI

187.    Plaintiff's mental disability, and/or perceived mental disability, and/or Plaintiff being regarded or treated as an employee with a mental disability, was a motivating reason for Defendants GEICO and/or DOES 1-25's disparate and discriminatory treatment of Plaintiff.

188.    As a direct and proximate result of the conduct of Defendants GEICO and/or DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in excess of $500,000.

189.    Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and malicious manner with the express intent of injuring or damaging Plaintiff or with conscious disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and exemplary damages against Defendants in a sum appropriate to punish and make an example of Defendants.

190.    The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25 had advance knowledge of the unfitness of employees and/or agents, who acted with malice, oppression, or fraud and employed them with a conscious disregard of the rights or safety of Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice was committed by or on the part of an officer, director, or managing agent of Defendants GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate to punish and make an example of Defendants GEICO and/or DOES 1-25.

///

191.    FEHA provides for an award of reasonable attorneys' fees and costs incurred by the prevailing party in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs under *Government Code* § 12965(b).

192.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## VII.

## THIRD CAUSE OF ACTION

## FAILURE TO REASONABLY ACCOMMODATE A DISABILITY IN VIOLATION OF FEHA – *GOVERNMENT CODE* § 12940, *ET SEQ.*

## (Against Defendants GEICO and DOES 1-25)

193.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Verified Complaint as if fully alleged herein.

194.    Defendants GEICO and/or DOES 1-25 are each subject to the laws of the State of California and are entities subject to suit under FEHA for failure to reasonably accommodate Plaintiff in that each of these Defendants is an employer who regularly employs five (5) or more persons.

195.    At all relevant times, Plaintiff was an employee of GEICO and/or DOES 1-25 with a mental disability within the definition of *Government Code* § 12926(j), because he suffered from a mental or psychological disorder or condition that limits the major life activity of working, and/or was regarded or treated by Defendants GEICO and/or DOES 1-25 as an employee with a protected mental disability that limits the major life activity of working and is covered by FEHA.

196.    Plaintiff was a qualified individual with a mental disability who could perform the essential functions of his job, with or without a reasonable accommodation, and without endangering his own health or safety or the health and safety of others.

197.    Defendants GEICO and/or DOES 1-25 learned of Plaintiff's mental disability at the latest in or around May 2020, when he submitted a request for accommodations for his mental

1    disability to GEICO.  Defendants GEICO and/or DOES 1-25 remain aware of Plaintiff's mental

2    disability through the present.

3          198.   Defendants GEICO and/or DOES 1-25's refusals to reasonably accommodate

4    Plaintiff included, but were not limited to:

5          a.     Refusing to accommodate Plaintiff's mental disability;

6          b.     Refusing to grant Plaintiff reasonable accommodations;

7          c.     Refusing to engage in a good faith interactive process regarding which

8                 accommodations were available to Plaintiff;

9          d.     Disturbing Plaintiff while he was on a legally protected medical leave of absence;

10         e.     Forcing Plaintiff to return from a medical leave of absence prematurely;

11         f.     Threatening to discipline or terminate Plaintiff if he did not return from a medical

12                leave of absence prematurely;

13         g.     Bond's abrasive comment that Plaintiff "had a lot of time off, for stress";

14         h.     Giving false and pretextual reasons for demoting Plaintiff;

15         i.     Demoting Plaintiff; and

16         j.     By all other conduct alleged above.

17         199.   Defendants GEICO and/or DOES 1-25 violated *Government Code* § 12940(m) by

18   failing and refusing to provide Plaintiff with reasonable accommodation for his known mental

19   disability, and/or perceived mental disability, despite the availability of such accommodations.

20         200.   As a direct and proximate result of the conduct of Defendants GEICO and/or

21   DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms

22   of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has

23   also suffered and will continue to suffer physical and emotional injuries, including nervousness,

24   humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and

25   anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in

26   excess of $500,000.

27         201.   Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and

28   malicious manner with the express intent of injuring or damaging Plaintiff or with conscious

---

1   disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute

2   oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and

3   exemplary damages against Defendants in a sum appropriate to punish and make an example of

4   Defendants.

5        202.    The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents

6   and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25

7   had advance knowledge of the unfitness of employees and/or agents, who acted with malice,

8   oppression, or fraud and employed them with a conscious disregard of the rights or safety of

9   Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive

10  damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance

11  knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or

12  malice was committed by or on the part of an officer, director, or managing agent of Defendants

13  GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against

14  Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate

15  to punish and make an example of Defendants GEICO and/or DOES 1-25.

16       203.    FEHA provides for an award of reasonable attorneys' fees and costs incurred by the

17  prevailing party in an action brought under its provisions.  Plaintiff has employed and will

18  continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has

19  incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an

20  award of attorneys' fees and costs under *Government Code* § 12965(b).

21       204.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

22  of this Court.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

VERIFIED COMPLAINT FOR DAMAGES
30

FREEBURG&GRANIERI

# VIII.

## <u>FOURTH CAUSE OF ACTION</u>

**FAILURE TO ENGAGE IN A GOOD FAITH INTERACTIVE PROCESS IN VIOLATION OF FEHA – *GOVERNMENT CODE* § 12940, *ET SEQ.***

**(Against Defendants GEICO and DOES 1-25)**

205.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Verified Complaint as if fully alleged herein.

206.    Defendants GEICO and/or DOES 1-25 are each subject to the laws of the State of California and are entities subject to suit under FEHA in that each of these Defendants is an employer who regularly employs five (5) or more persons.

207.    At all relevant times, Plaintiff was an employee of GEICO and/or DOES 1-25 with a mental disability within the definition of *Government Code* § 12926(j), because he suffered from a mental or psychological disorder or condition that limits the major life activity of working and/or was regarded or treated by Defendants GEICO and/or DOES 1-25 as an employee with a protected mental disability that limits the major life activity of working and is covered by FEHA.

208.    Plaintiff was a qualified individual with a mental disability who could perform the essential functions of his job, with or without a reasonable accommodation, and without endangering his own health or safety or the health and safety of others.

209.    Defendants GEICO and/or DOES 1-25 learned of Plaintiff's mental disability at the latest in or around May 2020, when he submitted a request for accommodations for his mental disability to GEICO.  Defendants GEICO and/or DOES 1-25 remain aware of Plaintiff's mental disability through the present.

210.    Defendants GEICO and/or DOES 1-25's failure to engage in a good faith interactive process with Plaintiff to determine reasonable accommodations for his mental disability included, but were not limited to:

a.    Refusing to accommodate Plaintiff's disabilities;

b.    Refusing to grant Plaintiff reasonable accommodations;

///

c.     Refusing to engage in a good faith interactive process regarding which accommodations were available to Plaintiff;

d.     Disturbing Plaintiff while he was on a legally protected medical leave of absence;

e.     Forcing Plaintiff to return from a medical leave of absence prematurely;

f.     Threatening to discipline or terminate Plaintiff if he did not return from a medical leave of absence prematurely;

g.     Bond's abrasive comment that Plaintiff "had a lot of time off, for stress";

h.     Giving false and pretextual reasons for demoting Plaintiff;

i.     Demoting Plaintiff; and

j.     By all other conduct alleged above.

211.   Defendants GEICO and/or DOES 1-25 violated *Government Code* §§ 12926.1(e) and 12940 *et seq.* by failing and refusing to engage in the interactive process in a good faith effort to provide Plaintiff with reasonable accommodation for his known mental disability and/or the mental disability he was regarded or treated as having, despite his request for reasonable accommodation.

212.   As a direct and proximate result of the conduct of Defendants GEICO and/or DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in excess of $500,000.

213.   Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and malicious manner with the express intent of injuring or damaging Plaintiff or with conscious disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and exemplary damages against Defendants in a sum appropriate to punish and make an example of Defendants.

FREEBURG&GRANIERI

214.     The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25 had advance knowledge of the unfitness of employees and/or agents, who acted with malice, oppression, or fraud and employed them with a conscious disregard of the rights or safety of Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice was committed by or on the part of an officer, director, or managing agent of Defendants GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate to punish and make an example of Defendants GEICO and/or DOES 1-25.

215.     FEHA provides for an award of reasonable attorneys' fees and costs incurred by the prevailing party in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs under *Government Code* § 12965(b).

216.     Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## IX.

## **FIFTH CAUSE OF ACTION**

**RETALIATION IN VIOLATION OF FEHA – *GOVERNMENT CODE* § 12940, *ET SEQ.***

**(Against Defendants GEICO and DOES 1-25)**

217.     Plaintiff alleges and incorporates by reference all preceding paragraphs of this Verified Complaint as if fully alleged herein.

218.     Defendants GEICO and/or DOES 1-25 are each subject to the laws of the State of California and are entities subject to suit under FEHA for retaliation in that each of these Defendants is an employer who regularly employs five (5) or more persons.

///

219.    At all relevant times, Plaintiff was an employee of GEICO and or DOES 1-25 with a mental disability within the definition of *Government Code* § 12926(j), because he suffered from a mental or psychological disorder or condition that limits the major life activity of working, and/or was regarded or treated by Defendants GEICO and/or DOES 1-25 as an employee with a protected mental disability that limits the major life activity of working and is covered by FEHA.

220.    Plaintiff was a qualified individual with a mental disability who could perform the essential functions of his job, with or without a reasonable accommodation, and without endangering his own health or safety or the health and safety of others.

221.    Defendants GEICO and/or DOES 1-25 learned of Plaintiff's mental disability at the latest in or around May 2020, when he submitted a request for accommodations for his mental disability to GEICO.  Defendants GEICO and/or DOES 1-25 remain aware of Plaintiff's mental disability through the present.

222.    Plaintiff engaged in a protected activity when he made numerous complaints about the discrimination to which he and other GEICO employees were subjected to in the workplace.

223.    Plaintiff engaged in a protected activity when he requested and used reasonable accommodations for his mental disability.

224.    Defendants GEICO and/or DOES 1-25 violated *Government Code* § 12940(m)(2) and *Government Code* § 12940(h) and retaliated against Plaintiff for requesting and using reasonable accommodations for his mental disability, and for opposing discrimination in the workplace, by acts which included, but were not limited to, the following:

a.    Gallimore's ageist comments towards and about Plaintiff;

b.    Gallimore bullying, ostracizing, and ignoring Plaintiff;

c.    Failing to maintain confidentiality regarding Ness' comments during his interview with Citron and Bond;

d.    Furnas telling Ness that his association with Plaintiff was damaging to his career and reputation;

e.    Gallimore's comment to Wright that "the old man is taking time off, you better keep an eye on him," in reference to Plaintiff;

FREEBURG&GRANIERI

f.   Ignoring Plaintiff's complaints about the discrimination to which he and other employees were subjected;

g.   Failing to take appropriate disciplinary action against Gallimore;

h.   Retaliating against Plaintiff for complaining about unlawful discrimination in the workplace;

i.   Issuing Plaintiff the February 7, 2019 disciplinary memo;

j.   Encouraging Plaintiff's coworkers to disparage him;

k.   Bond and Furnas berating Plaintiff;

l.   Furnas calling Plaintiff and "old man";

m.   Issuing Plaintiff the March 21, 2019 warning;

n.   Forcing Plaintiff to work under Gallimore;

o.   Forcing Plaintiff to return from a medical leave of absence prematurely;

p.   Threatening to discipline or terminate Plaintiff if he did not return from a medical leave of absence prematurely;

q.   Scrubbing Gallimore's file of Plaintiff and other employees' complaints against Gallimore;

r.   Gallimore claiming that Sanchez was harassing Plaintiff in order to make problems for him;

s.   Bond's abrasive comment that Plaintiff "had a lot of time off, for stress";

t.   Bond's comment that Plaintiff was "problematic";

u.   Boster and Salt referring to Plaintiff as "crazy";

v.   Encouraging Plaintiff to make negative comments against Sanchez that were later used against Plaintiff;

w.   Using over two (2) year old disciplinary actions that were rescinded and tainted with discriminatory animus to justify demoting Plaintiff;

x.   Issuing Plaintiff the May 20, 2021 disciplinary memo;

y.   Failing to follow GEICO's progressive discipline policy with respect to Plaintiff;

z.   Gallimore advertising Plaintiff's demotion in an effort to humiliate him;

1          aa.     Giving false and pretextual reasons for demoting Plaintiff; and

2          bb.     Demoting Plaintiff; and

3          cc.     By all other conduct alleged above.

4          225.    As a direct and proximate result of the conduct of Defendants GEICO and/or

5 DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms

6 of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has

7 also suffered and will continue to suffer physical and emotional injuries, including nervousness,

8 humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and

9 anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in

10 excess of $500,000.

11         226.    Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and

12 malicious manner with the express intent of injuring or damaging Plaintiff or with conscious

13 disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute

14 oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and

15 exemplary damages against Defendants in a sum appropriate to punish and make an example of

16 Defendants.

17         227.    The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents

18 and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25

19 had advance knowledge of the unfitness of employees and/or agents, who acted with malice,

20 oppression, or fraud and employed them with a conscious disregard of the rights or safety of

21 Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive

22 damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance

23 knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or

24 malice was committed by or on the part of an officer, director, or managing agent of Defendants

25 GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against

26 Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate

27 to punish and make an example of Defendants GEICO and/or DOES 1-25.

28 ///

228.    FEHA provides for an award of reasonable attorneys' fees and costs incurred by the prevailing party in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an award of attorneys' fees and costs under *Government Code* § 12965(b).

229.    Plaintiff has been generally damaged in an amount within the jurisdictional limits of this Court.

## X.

## SIXTH CAUSE OF ACTION

## FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF FEHA – *GOVERNMENT CODE* § 12940, *ET SEQ.*

### (Against Defendants GEICO and DOES 1-25)

230.    Plaintiff alleges and incorporates by reference all preceding paragraphs of this Verified Complaint as if fully alleged herein.

231.    Defendants GEICO and/or DOES 1-25 are subject to the laws of the State of California and are entities subject to suit under FEHA, because they regularly employ five (5) or more persons in the state of California.

232.    At all relevant times, Plaintiff was an employee of GEICO with a mental disability within the definition of *Government Code* § 12926(j), because he suffered from a mental or psychological disorder or condition that limits the major life activity of working, and/or was regarded or treated by Defendants GEICO and/or DOES 1-25 as an employee with a protected mental disability that limits the major life activity of working and is covered by FEHA.

233.    Plaintiff was a qualified individual with a mental disability who could perform the essential functions of his job, with or without a reasonable accommodation, and without endangering his own health or safety or the health and safety of others.

234.    Defendants GEICO and/or DOES 1-25 learned of Plaintiff's mental disability at the latest in or around May 2020, when he submitted a request for accommodations for his mental disability to GEICO.  Defendants GEICO and/or DOES 1-25 remain aware of Plaintiff's mental

1    disability through the present.

2         235.    At all relevant times mentioned herein, Plaintiff was over forty-years-old.

3         236.    Plaintiff engaged in a protected activity when he made numerous complaints about

4    the discrimination to which he and other GEICO employees were subjected to in the workplace.

5         237.    Plaintiff engaged in a protected activity when he requested and used reasonable

6    accommodations for his mental disability.

7         238.    Defendants GEICO and/or DOES 1-25 violated *Government Code* § 12940(k) and

8    failed to prevent discrimination and retaliation on the basis of Plaintiff's age, and/or for Plaintiff

9    opposing unlawful discrimination in the workplace, and/or Plaintiff's mental disability, and/or for

10   requesting reasonable accommodations for his known mental disability by acts which included,

11   but were not limited to, the following:

12        a.    Gallimore's ageist comments towards and about Plaintiff;

13        b.    Gallimore bullying, ostracizing, and ignoring Plaintiff;

14        c.    Refusing to provide Plaintiff performance evaluations for several years;

15        d.    Refusing to provide Plaintiff pay raises as a result of GEICO's failure to provide

16              him performance evaluations;

17        e.    Failing to maintain confidentiality regarding Ness' comments during his interview

18              with Citron and Bond;

19        f.    Furnas telling Ness that his association with Plaintiff was damaging to his career

20              and reputation;

21        g.    Gallimore's comment to Wright that "the old man is taking time off, you better

22              keep an eye on him," in reference to Plaintiff;

23        h.    Ignoring Plaintiff's complaints about the discrimination to which he and other

24              employees were subjected;

25        i.    Failing to take appropriate disciplinary action against Gallimore;

26        j.    Retaliating against Plaintiff for complaining about unlawful discrimination in the

27              workplace;

28        k.    Issuing Plaintiff the February 7, 2019 disciplinary memo;

---

FREEBURG&GRANIERI

l.      Encouraging Plaintiff's coworkers to disparage him;

m.      Bond and Furnas berating Plaintiff;

n.      Furnas calling Plaintiff and "old man";

o.      Issuing Plaintiff the March 21, 2019 warning;

p.      Forcing Plaintiff to work under Gallimore;

q.      Forcing Plaintiff to return from a medical leave of absence prematurely;

r.      Threatening to discipline or terminate Plaintiff if he did not return from a medical leave of absence prematurely;

s.      Scrubbing Gallimore's file of Plaintiff and other employees' complaints against Gallimore;

t.      Gallimore claiming that Sanchez was harassing Plaintiff in order to make problems for him;

u.      Bond's abrasive comment that Plaintiff  "had a lot of time off, for stress";

v.      Bond's comment that Plaintiff was "problematic";

w.      Boster and Salt referring to Plaintiff as "crazy";

x.      Encouraging Plaintiff to make negative comments against Sanchez that were later used against Plaintiff;

y.      Using over two (2) year old disciplinary actions that were rescinded and tainted with discriminatory animus to justify demoting Plaintiff;

z.      Issuing Plaintiff the May 20, 2021 disciplinary memo;

aa.     Failing to follow GEICO's progressive discipline policy with respect to Plaintiff;

bb.     Gallimore advertising Plaintiff's demotion in an effort to humiliate him;

cc.     Giving false and pretextual reasons for demoting Plaintiff;

dd.     Demoting Plaintiff; and

ee.     By all other conduct alleged above.

239.    As a result of the foregoing conduct by Defendants, Plaintiff was subjected to disability discrimination and/or retaliation as set forth above.

///

FREEBURG&GRANIERI

240.     As a direct and proximate result of the conduct of Defendants GEICO and/or DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has also suffered and will continue to suffer physical and emotional injuries, including nervousness, humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in excess of $500,000.

241.     Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and malicious manner with the express intent of injuring or damaging Plaintiff or with conscious disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and exemplary damages against Defendants in a sum appropriate to punish and make an example of Defendants.

242.     The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25 had advance knowledge of the unfitness of employees and/or agents, who acted with malice, oppression, or fraud and employed them with a conscious disregard of the rights or safety of Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice was committed by or on the part of an officer, director, or managing agent of Defendants GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate to punish and make an example of Defendants GEICO and/or DOES 1-25.

243.     FEHA provides for an award of reasonable attorneys' fees and costs incurred by the prevailing party in an action brought under its provisions.  Plaintiff has employed and will continue to employ attorneys for the initiation and prosecution of this action.  Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.  Plaintiff is entitled to an

FREEBURG & GRANIERI
A CIVIL LITIGATION LAW FIRM

1  award of attorneys' fees and costs under *Government Code* § 12965(b).

2       244.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

3  of this Court.

4  **XI.**

5  **SEVENTH CAUSE OF ACTION**

6  **RETALIATION IN VIOLATION OF *LABOR CODE* § 1102.5**

7  **(Against Defendants GEICO and DOES 1-25)**

8       245.    Plaintiff alleges and incorporates by reference all preceding paragraphs of this

9  Verified Complaint as if fully alleged herein.

10       246.    *Labor Code* § 1102.5(b) states that "[a]n employer, or any person acting on behalf

11  of the employer, shall not retaliate against an employee for disclosing information, or because the

12  employer believes that the employee disclosed or may disclose information, to a government or

13  law enforcement agency, to a person with authority over the employee or another employee who

14  has the authority to investigate, discover, or correct the violation or noncompliance, or public body

15  conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe

16  that the information discloses a violation of state or federal statute, or a violation of or

17  noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing

18  the information is part of the employee's job duties."

19       247.    Plaintiff disclosed information to persons with authority over him and/or to persons

20  with authority to investigate, discover, or correct the violations of law about which he complained,

21  including, but not limited to, the unlawful discrimination that he and other employees were

22  subjected to in the workplace.

23       248.    At the time Plaintiff made the complaints that disclosed information about the

24  foregoing illegal conduct, he had reasonable cause to believe that the information in his

25  complaints disclosed a violation of state or federal statute, or a violation of or non-compliance

26  with a local, state, or federal rule of regulation.

27       249.    GEICO and/or DOES 1-25 retaliated against Plaintiff for making the foregoing

28  complaints by acts which included, but were not limited to:

FREEBURG&GRANIERI

1    a.    Gallimore's ageist comments towards and about Plaintiff;

2    b.    Gallimore bullying, ostracizing, and ignoring Plaintiff;

3    c.    Failing to maintain confidentiality regarding Ness' comments during his interview

4          with Citron and Bond;

5    d.    Furnas telling Ness that his association with Plaintiff was damaging to his career

6          and reputation;

7    e.    Gallimore's comment to Wright that "the old man is taking time off, you better

8          keep an eye on him," in reference to Plaintiff;

9    f.    Ignoring Plaintiff's complaints about the discrimination to which he and other

10         employees were subjected;

11   g.    Failing to take appropriate disciplinary action against Gallimore;

12   h.    Retaliating against Plaintiff for complaining about unlawful discrimination in the

13         workplace;

14   i.    Issuing Plaintiff the February 7, 2019 disciplinary memo;

15   j.    Encouraging Plaintiff's coworkers to disparage him;

16   k.    Bond and Furnas berating Plaintiff;

17   l.    Furnas calling Plaintiff an "old man";

18   m.    Issuing Plaintiff the March 21, 2019 warning;

19   n.    Forcing Plaintiff to work under Gallimore;

20   o.    Forcing Plaintiff to return from a medical leave of absence prematurely;

21   p.    Threatening to discipline or terminate Plaintiff if he did not return from a medical

22         leave of absence prematurely;

23   q.    Scrubbing Gallimore's file of Plaintiff and other employees' complaints against

24         Gallimore;

25   r.    Gallimore claiming that Sanchez was harassing Plaintiff in order to make problems

26         for him;

27   s.    Bond's abrasive comment that Plaintiff "had a lot of time off, for stress";

28   t.    Bond's comment that Plaintiff was "problematic";

FREEBURG&GRANIERI

1    u.    Boster and Salt referring to Plaintiff as "crazy";

2    v.    Encouraging Plaintiff to make negative comments against Sanchez that were later

3          used against Plaintiff;

4    w.    Using over two (2) year old disciplinary actions that were rescinded and tainted

5          with discriminatory animus to justify demoting Plaintiff;

6    x.    Issuing Plaintiff the May 20, 2021 disciplinary memo;

7    y.    Failing to follow GEICO's progressive discipline policy with respect to Plaintiff;

8    z.    Gallimore advertising Plaintiff's demotion in an effort to humiliate him;

9    aa.   Giving false and pretextual reasons for demoting Plaintiff;

10   bb.   Demoting Plaintiff; and

11   cc.   By all other conduct alleged above.

12   250.   Defendants GEICO and/or DOES 1-25 violated *Labor Code* § 1102.5 by retaliating

13   against Plaintiff for disclosing information to persons with authority over him and/or to persons

14   with authority to investigate, discover, or correct the violations of law about which he complained,

15   including, but not limited to, the unlawful discrimination he and other employees were subjected

16   to in the workplace.

17   251.   As a direct and proximate result of the conduct of Defendants GEICO and/or

18   DOES 1-25, and each of them, Plaintiff has suffered and will continue to suffer damages in terms

19   of lost wages, lost bonuses, lost benefits, and other pecuniary loss according to proof.  Plaintiff has

20   also suffered and will continue to suffer physical and emotional injuries, including nervousness,

21   humiliation, depression, anguish, embarrassment, fright, shock, pain, discomfort, fatigue, and

22   anxiety.  The amount of Plaintiff's damages will be ascertained at trial, but is believed to be in

23   excess of $500,000.

24   252.   Defendants GEICO and/or DOES 1-25 acted in a despicable, oppressive, and

25   malicious manner with the express intent of injuring or damaging Plaintiff or with conscious

26   disregard of his rights and with the intent to vex, injure, and annoy Plaintiff, such as to constitute

27   oppression, fraud, or malice under *Civil Code* § 3294, thereby entitling Plaintiff to punitive and

28   exemplary damages against Defendants in a sum appropriate to punish and make an example of

FREEBURG&GRANIERI

1    Defendants.

2        253.    The acts of oppression, fraud, or malice against Plaintiff were engaged in by agents

3    and employees of Defendants GEICO and/or DOES 1-25.  Defendants GEICO and/or DOES 1-25

4    had advance knowledge of the unfitness of employees and/or agents, who acted with malice,

5    oppression, or fraud and employed them with a conscious disregard of the rights or safety of

6    Plaintiff, and/or authorized or ratified the wrongful conduct for which an award of punitive

7    damages is sought, and/or was personally guilty of oppression, fraud, or malice.  The advance

8    knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or

9    malice was committed by or on the part of an officer, director, or managing agent of Defendants

10   GEICO and/or DOES 1-25, thereby entitling Plaintiff to punitive and exemplary damages against

11   Defendants GEICO and/or DOES 1-25 in accordance with *Civil Code* § 3294 in a sum appropriate

12   to punish and make an example of Defendants GEICO and/or DOES 1-25.

13       254.    The violation of *Labor Code* § 1102.5(b) also entitles Plaintiff to civil penalties

14   pursuant to *Labor Code* § 1102.5(f) in an amount not exceeding $10,000.00 for each violation.

15       255.    Plaintiff has incurred and will continue to incur attorneys' fees and costs herein.

16   Plaintiff is entitled to an award of attorneys' fees and costs under *Labor Code* § 1102.5(j).

17       256.    Plaintiff has been generally damaged in an amount within the jurisdictional limits

18   of this Court.

19                                        **XII.**

20                          **EIGHTH CAUSE OF ACTION**

21      **DECLARATORY AND INJUNCTIVE RELIEF PURSUANT TO *CODE OF CIVIL***

22        ***PROCEDURE* § 1060; *GOVERNMENT CODE* §§ 12920 and 12920.5, *ET SEQ.***

23                    **(Against Defendants GEICO and DOES 1-25)**

24       257.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this

25   Verified Complaint as if fully alleged herein.

26       258.    An actual controversy exists between Plaintiff and Defendants GEICO and/or

27   DOES 1-25, concerning whether Defendants, and each of them, violated Plaintiff's rights under

28   the California Fair Employment and Housing Act, as alleged in the First, Second, Third, Fourth,

Fifth, and Sixth causes of action in this Verified Complaint.  Plaintiff seeks a finding from the Court that Defendants' adverse employment actions were substantially motivated by unlawful discrimination and/or retaliation, regardless of whether Defendants prove that they would have made the same employment decisions concerning Plaintiff even if discrimination and/or retaliation was not a substantial motivating factor for the adverse employment actions concerning Plaintiff. Plaintiff seeks an order from the Court condemning Defendants' discriminatory employment policies or practices, as provided by *Code of Civil Procedure* § 1060.

259.    In addition, upon a finding of unlawful discrimination and/or retaliation, Plaintiff requests that the Court grant injunctive relief to stop the discriminatory and retaliatory practices which violate FEHA as provided for in *Government Code* §§ 12920, 12920.5, and California Supreme Court's decisions in *Harris v. City of Santa Monica*, 56 Cal. 4th, 203, 234-35 (2013) and *Aguilar v. Avis Rent A Car System, Inc.*, 21 Cal. 4th, 121, 131-32 (1999).

260.    Under FEHA, "in order to eliminate discrimination, it is necessary to provide effective remedies that will both prevent and deter unlawful employment practices and redress the adverse effects of those practices on aggrieved persons." *Government Code* § 12920.5.

261.    One of the stated purposes of FEHA is "to provide effective remedies which will eliminate" employment discrimination.  *Government Code* § 12920.

262.    FEHA authorizes a court to grant injunctive relief and prospective relief including but not limited to, cease and desist orders, posting of notices, training of personnel and other similar relief that is intended to correct unlawful employment practices.  *Government Code* § 12926(a).

263.    Upon determination that unlawful discrimination and/or retaliation was a substantial motivating factor in any employment decision concerning Plaintiff, Plaintiff requests this Court to enter an order enjoining Defendants from engaging in those practices, requiring the posting of notices containing employees' rights and detailing Defendants' violations of FEHA, requiring Defendants to effectively train their personnel in FEHA's proscriptions against discrimination and retaliation, and requiring Defendants to make periodic reports to the Court to ensure compliance by Defendants, and each of them, with their obligations under FEHA.

264. Pursuant to *Government Code* § 12965(b), Plaintiff seeks an award from the Court of reasonable attorneys' fees and costs incurred in obtaining the declaratory and injunctive relief.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## **PRAYER**

1. For general damages, according to proof, on each cause of action for which such damages are available, which are believed to be in excess of $500,000;

2. For special damages, according to proof, on each cause of action for which such damages are available;

3. For compensatory damages, according to proof, on each cause of action for which such damages are available;

4. For punitive damages, according to proof, for each cause of action for which such damages are available;

5. For pre-judgment and post-judgment interest according to law;

6. For reasonable attorneys' fees incurred in this action on those causes of action for which such fees are recoverable under the applicable law;

7. For costs of suit incurred in this action;

8. For declaratory and injunctive relief as provided in the eighth cause of action; and

9. For such other and further relief as the Court deems just and proper.


Dated: June 22, 2022                          FREEBURG & GRANIERI, APC


                                              By: _____
                                                  Gregory S. Freeburg
                                                  Christy W. Granieri
                                                  Anton C. Swain-Gil
                                                  Attorneys for Plaintiff
                                                  Erik Stentz

## **DEMAND FOR JURY TRIAL**

Plaintiff Erik Stentz hereby demands a trial by jury on all causes of action alleged herein in the Verified Complaint for Damages and Demand for Jury Trial.

Dated: June 22, 2022                    FREEBURG & GRANIERI, APC


By: _____
Gregory S. Freeburg
Christy W. Granieri
Anton C. Swain-Gil
Attorneys for Plaintiff
Erik Stentz

1    **<u>VERIFICATION</u>**

2        I have read the foregoing Verified Complaint for Damages and Demand for Jury Trial and

3    know its contents.

4        I am a party to this action.  The matters stated in the Verified Complaint for Damages and

5    Demand for Jury Trial are true of my own knowledge, except as to those matters which are stated

6    on information and belief, and as to those matters, I believe them to be true.

7

8        Executed on ____06/21/22____, at Weed, California.

9

10       I declare under penalty of perjury under the laws of the State of California and under the

11   laws of the United States of America that the foregoing is true and correct.

12

13                                   _____
                                     erik stentz (Jun 21, 2022 23:44 PDT)

14                                       Erik Stentz

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEBURG & GRANIERI
A CIVIL LITIGATION LAW FIRM

# EXHIBIT A

**9:40 am**….  Brian Wright, Robert Aldridge, Ross Gunderson, Ryan Ness and Kyle Strom met in AD Director Brian Wright's office.  During the pre-meeting Brian discussed concern about the creation of the LA team's written plan for their team's culture.  Brian advised that the document reflected that team's culture, but that our team's culture may be different.  The document also divided our AD team into two teams… LA team and Maverick team. The conversation furthered the premise that TWO California AD teams existed vs. ONE California team.  I also advised Brian, with witnesses, that I would need to return to the SD Airport to gather my belongings that morning because my belongings had been held by TSA. I presented written documents to Brian proving that I would need to return to collect my belongings. He advised he understood.

**Approximately 10:30 am**> Mr. Jacobi presented his vision for AD California.  Rule #1 of his vision was that California AD was ONE team.  This Rule was confusing given the multiple reports that are sent showing TWO teams, the lack of coordination between Brian and Phil's teams, and the conversation that had just occurred in the pre-meeting.  I challenged Mr. Jacobi on the "ONE" team principle citing the confusion that has been created around one team or two.  Mr. Jacobi attempted to explain why reports may show two teams although I don't believe he was understanding my communication or question.  We continued to communicate in circles as I explained my sense of the state of AD, but I believe our communication was not being understood either Mr. Jacobi or myself.  Mr. Jacobi finally advised me that other managers time was valuable at which point I advised that my time was also valuable.  I advised that I was looking forward to closing the deal on  "ONE" team and that I also needed to close another deal by getting to TSA that morning.  After Mr. Jacobi continued on, I collected my bag, computer and phone and left for the SD airport.

I dispute any suggestion that:

- At any point any cursing occurred

- That I purposefully slammed a door.  I had my laptop, phone and roller bag in hands.  The door shut itself.  I did not hold the door as it closed because I had multiple item in my hands.

- I at any time raised my voice

I accept this communication could have gone better.  However, this style of debate and challenge as a style of communication has been well documented as the established culture of communication in Region 4 during my tenure as member of management in R4 AD.  In comparison to communication where associates have been named "*Scumbags*", where I had been threatened and referred to as an "Old Man", or where managers have been verbally berated by Margi Rogers the communication on 3/20/2019 was tame. If Mr. Jacobi felt uncomfortable, I apologize, but this style of communication has been demonstrated regularly during my tenure. Since the New Administration of M. Furnas I have heard a lot about the need for a Culture Change in R4 Auto Damage: I am excited about this changer and referenced same in today's meeting: A+.  I continue to feel uncomfortable with the requirement to be present at meetings with the same Director who I and other witness associates filed a truthful  complaint without any communicated remedy going forward for the hostile environment we experienced.

The meeting on 3/20 was communicated by Mr. Wright as an open and informal forum for discussion with Mr. Jacobi that was intended to solicit our thoughts and gain some understanding of the Managers.  If it had been presented to me differently, I may approached my communication differently.

====================
This email/fax message is for the sole use of the intended
recipient(s) and may contain confidential and privileged information.
Any unauthorized review, use, disclosure or distribution of this
email/fax is prohibited. If you are not the intended recipient, please
destroy all paper and electronic copies of the original message.

# EXHIBIT B

**Stentz, Erik Stephen**

Manager, Auto Damage Claims

Manager: Brian Wright

Evaluated By: Brian Wright

**GEICO 2019 Annual PA**

Organization: San Diego - SD AD Claims - 2 (Phillip Gallimore)

Location: CA San Francisco - JPS

01/01/2019 - 12/31/2019

## Overall

### Manager Overall Evaluation

| | |
|---|---|
| Rating: | 3 |
| Comment: | I look forward to 2020 and beyond. |

With the implementation of ARX 2.0 throughout 2019 and Erik's team maintaining 2.0 coverage through the entire year, additional consideration was extended to his Core metric rating to allow his overall result to reflect 3.0. // This result was also adjusted to take into consideration the time Erik was out on leave during 2019.

## Acknowledgement

### Manager

| | | | |
|---|---|---|---|
| Entered by: | Brian Wright | Date: | 02/13/2020 |
| Status: | Manager Acknowledged. | | |
| Comment: | Thank you for your contribution in 2019 | | |

### Associate

| | | | |
|---|---|---|---|
| Entered by: | Erik Stentz (On Leave) | Date: | 02/13/2020 |
| Status: | Associate Acknowledged. | | |
| Comment: | | | |

*********************************************************************************

On behalf of Erik Stentz, I am acting as delegate in Workday to submit this adjusted PA due to the fact the associate is out on leave until Monday 2/17/20 and all AM2020 PA's and Merit data must be entered by Friday 2/14/20. A PDF of the PA will be sent to Erik via Outlook for his review and any additional commentary can/will be added to Workday on Erik's behalf once he returns to work.

*********************************************************************************

*2019 Tough Start >  After That :      Best    Year    Ever :*

*Growth -  Increased Focus - Influence- Investment Gains-*
*Relationships-Skill building-Respect-Freedom-Opportunities-Helping*
*Others- Health     and     Winning.....A+ > Thank -you  !!*

*13 years this month with such a great company > No one will ever eclipse what W190*
*accomplished.. . it wont be necessary...*

.....-*ess*

*PA = Pretty Awesome !*

-

## Goals

### CE/QUALITY

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| 95% | 90% | 80% | 70% | <64.4% |

Weight:    15

| Manager Evaluation | Associate Evaluation |
|---|---|
| Rating:    4.2 | Rating: |
| Comment:    TPA was one of Erik's strong points in 2019. His team is good at implementing and executing the claim call standards // This result was adjusted to take into consideration the time Erik was out on leave during 2019. | Comment: |

### CUSTOMER SERVICE SERVEY

|    | 5 | 4 | 3 | 2 | 1 |
|----|----|----|----|----|----|
| DB | 88% | 83% | 74% | 70% | 63% |
| FI | 86% | 80% | 72% | 67% | 60% |
| XD | 95% | 89% | 82% | 77% | 68% |
| XF | 81% | 75% | 69% | 59% | 54% |

Weight:    15

| Manager Evaluation | Associate Evaluation |
|---|---|
| Rating:    2.2 | Rating: |
| Comment:    Erik's team experienced some ups and downs in this area throughout the year. While their TPA execution is strong, this was an area of claim communication opportunity. The year ended with one of the teams highest single month CSS results obtained, which is an indication things are moving in the right direction for 2020. // This result was adjusted to take into consideration the time Erik was out on leave during 2019. | Comment: |

## PRODUCTIVITY

| 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|
| 105 | 86 | 78 | 66 | 55 |

Supv/Manager will be scale above based on productivity minus credit for supplements.

Weight:     15

| Manager Evaluation | Associate Evaluation |
|---|---|
| Rating:     **2.5** | Rating: |
| Comment:     Erik's productivity was mainly driven by his unit handling 2.0 along with the heavy concentration of claims in and around the Oakland/Fremont/Hayward areas. // This result was adjusted to take into consideration the time Erik was out on leave during 2019. | Comment: |

## REINSPECTIONS

|  | 5 | 4 | 3 | 2 | 1 |
|---|---|---|---|---|---|
| ARX | > 99.60% | 99.00% | 98.00% | 97.15% | < 97.15% |
| NON-ARX | > 99.50% | 98.50% | 97.50% | 96.50% | < 96.50% |
| TL | > 99.75% | 99.25% | 98.50% | 97.65% | < 97.65% |

Weight:     15

| Manager Evaluation | Associate Evaluation |
|---|---|
| Rating:     **2.7** | Rating: |
| Comment:     Erik's 2019 Field Audit results were proficient at the first of the year and the end of the year, with reflections of opportunity at mid year with a few teams. I am confident that Erik will move his team to being fully proficient with this area in 2020. // This result was adjusted to take into consideration the time Erik was out on leave during 2019. | Comment: |

## RENTAL DAYS BILLED

Regional standard

Weight:     10

| Manager Evaluation | Associate Evaluation |
|---|---|
| Rating:     **2.7** | Rating: |
| Comment:     Erik's rental result per CORE reflects a 1.46. This result however includes the first three months of 2019 at a 1 rating due an error in the Core reporting standards not populating. Those months were removed from Erik's overall result to allow his rating to reflect an accurate result of 1.7. While this area shows opportunity, there were months of | Comment: |

improvement throughout the year that shows the team can performance manage this area of cost control just like every other. I look forward to what this team can do in 2020 in this area. // This result was adjusted to take into consideration the time Erik was out on leave during 2019 along with consideration for PL&TL XD Rental activity.

## SALVAGE

5 Rating: < 10 days
4 Rating: 12 days
3 Rating: 14 days
2 Rating: 17 days
1 Rating: > 17 days

Weight:      10

| Manager Evaluation | | Associate Evaluation | |
|---|---|---|---|
| Rating: | **3.4** | Rating: | |
| Comment: | Salvg control was on of Erik's strong points in 2019. His team was able to jump into the top quartile of moving salvage during our We Will initiative. This is an area, with continued focus, could easily move into the mid 4's for an overall result. Nice work. // This result was adjusted to take into consideration the time Erik was out on leave during 2019. | Comment: | |

## Severity

Regional standard

Weight:      20

| Manager Evaluation | | Associate Evaluation | |
|---|---|---|---|
| Rating: | **3** | Rating: | |
| Comment: | Erik's severity rating per CORE reflects 2.15. This result however includes the first three months of 2019 at a 1 rating due to an error in the Core reporting standards not populating. Those months were removed from Erik's overall result to allow his rating to reflect an accurate result of 2.68. With the implementation of ARX 2.0 throughout 2019 and Erik's team maintaining 2.0 coverage through the entire year, additional consideration was extended to their Core metric to allow his overall result to reflect 3.0. // This result was adjusted to take into consideration the time Erik was out on leave | Comment: | |

during 2019.

---
Section Summary
---

| Manager Evaluation | Associate Evaluation |
|---|---|
| Rating:          3 | Rating: |

## Accomplishments

12.5  + years running one of the largest span-piff-growth & profitable market sectors in the company. Span  x 2  : 1x  paycheck : Still  not at midpoint 2020>  Honor to serve.

Some of awards W190 >Ess

- 4x MOY
- 360 : Highest in Dept. x 4 or 5 x ?  4.93's  etc..  I always saw it as credit advance that one must now go out and earn.
- 3x Best Manager Rating CW
- R4 Audit passes all categories
- 3 years NO PA meeting or measurable raise : epic> award..?

*W190 > 13 Years : Under   ESS\**
<u>Some of What  came out of it:</u>
192 adjusters
41 AD Supervisors developed  A+
4 AD Directors
1 AVP

1 Constant > * {see above..}.

*Perf Mgmt to 41 AD Supervisors : over 13 years :*

0 Pips
0 Warnings
0 HR Complaints
0 Transfers or Turnover due to Manager : Fact Check and get back to me if feel the need.

Always spoke the truth >Quick to apologize when wrong >Never backed down when right-business need  or associate respect matter> Title entitled me to nothing : Earn it : Support your people and their dreams.

" I am nothing …. but together we are everything: W190" -ess

| Manager Evaluation | Associate Evaluation |
|---|---|
| Comment: Erik brings an impressive track record to the table with many years of dedicated service to GEICO and the associates he oversees. During last years PA review at the onset of 2019, Erik expressed his excitement for what the year would bring and appreciated the review of the PA and how his performance impacted the region. While 2019 did produce a Warning in March, there have been no other circumstances that have surfaced related to the substance of that document and therefore it will not impact this PA. Erik is a valued member of the R4 AD Team and I look forward to his continued contribution throughout 2020 and beyond. // This result was adjusted to take into consideration the time Erik was out on leave during 2019. | Comment: |

# EXHIBIT C



**TO:  Erik Stentz**

**FROM:  James Jones**

**RE:  Management Expectations**

As a member of management, your responsibilities include effective leadership, communication, and support which fosters a productive work environment. We must be confident that our leaders will act in ways that are consistent with these requirements in all aspects of their work. Associates in a leadership role are instrumental in maintaining a fair workplace; one which is free of disrespect, harassment, and intimidation through the example they set and adhering to all company policies. The GEICO Code of Conduct lays out the standards of professional conduct, which includes the following: *Maintain an atmosphere of mutual respect by and for all associates and applicants. Associate behavior must be professional, courteous and friendly and not create what a reasonable person would consider to be an intimidating, hostile or offensive work environment to each other and to our internal and external customers.* As a member of management, you should be setting an unfailing example of following these principles for others to follow.

There have been previous concerns brought to my attention about your leadership and behavior that do not meet the standards outlined above. Your actions resulted in a Memo to your file issued on February 7, 2019, and in a separate occurrence an ongoing Warning issued and signed by you on March 21, 2019.

We recently completed two investigations that were initiated as a result of associate complaints about your conduct and interactions. I acknowledge that you disagree with some of the concerns expressed by these associates; however, the items listed below were corroborated by others or by written verification:

- You submitted a towing expense in December 2020 and under the description for the expense, you listed "FLEET MANAGER FAILURE > CO CAR TOWED AS A RESULT>".

- During a recent related interview with our HR Supervisor and Senior Compliance Specialist on February 3, 2021 you made the following statements:
  - "You have to be intelligent enough to cypher it out. When she [Karina] sends the list out, it's wrong."
  - "How hard is it, Karina? Know your job."
  - "She works half day she's often a little tyrant."
  - "I'm 260 miles away… whatever. It's none of your business, Karina."
  - "Honey, if you want to take a shot at me, you're going to need a little more than a spit wad. I'm a moving target and hard to kill. She's a joke."
  - "She's just a fly in the ointment.  We're dealing with all kinds of stuff.  She's just a pain."

- Related to another investigation, there was a concern regarding your interactions towards a customer service representative for one of our business partners, The Hartford. During a recent call with The Hartford on March 2, 2021, your behavior toward the representative

Sensitivity: Confidential



MEMORANDUM
May 20, 2021
Page 2 of 2

was documented and described as combative, sarcastic, and hostile. This was confirmed through the call recording.

Both investigations confirmed a lack of professionalism that is not consistent with our requirements for all associates and especially for members of management. Furthermore, these instances violate both our GEICO Code of Conduct and the ongoing Warning administered and signed by you on March 21, 2019. For those reasons, I do not have the confidence that you can remain in a leadership role. Effective May 22, 2021, we will reclassify you to an Auto Damage Adjuster, Grade 65, and your new salary will be $98,473.05.

Sensitivity: Confidential

# EXHIBIT D

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                                   GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                             KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

December 20, 2021

Anton Swain-Gil
107 S. Fair Oaks Ave, Suite 321
Pasadena, CA 91105

RE:     **Notice to Complainant's Attorney**
        DFEH Matter Number: 202112-15683020
        Right to Sue: Stentz / Government Employees Insurance Company et al.

Dear Anton Swain-Gil:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

DFEH-ENF 80 RS

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

December 20, 2021

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202112-15683020
      Right to Sue: Stentz / Government Employees Insurance Company et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

DFEH-ENF 80 RS

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

December 20, 2021

Erik Stentz
14904 Driftwood Lane
Weed, CA 96094

RE:    **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202112-15683020
       Right to Sue: Stentz / Government Employees Insurance Company et al.

Dear Erik Stentz:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective December 20, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency          GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 l Elk Grove l CA l 95758
(800) 884-1684 (Voice) l (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov l Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Erik Stentz                                                          DFEH No. 202112-15683020

                                        Complainant,

vs.

Government Employees Insurance Company
5260 Western Avenue
Chevy Chase, MD 20815

Phillip Gallimore
,

LaDonna Bond
,

Martha Furnas
,

Brian Wright
,

James Jones
,

                                        Respondents

---

**1.** Respondent **Government Employees Insurance Company** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2.**Complainant is naming **Phillip Gallimore** individual as Co-Respondent(s).
Complainant is naming **LaDonna Bond** individual as Co-Respondent(s).
Complainant is naming **Martha Furnas** individual as Co-Respondent(s).
Complainant is naming **Brian Wright** individual as Co-Respondent(s).
Complainant is naming **James Jones** individual as Co-Respondent(s).

**3.** Complainant **Erik Stentz**, resides in the City of **Weed,** State of **CA.**

Date Filed: December 20, 2021

DFEH-ENF 80 RS

**4**. Complainant alleges that on or about **May 20, 2021**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental), age (40 and over), other, association with a member of a protected class, family care or medical leave (cfra) and as a result of the discrimination was reprimanded, demoted, denied any employment benefit or privilege, denied reasonable accommodation for a disability, other, denied work opportunities or assignments, denied or forced to transfer, denied family care or medical leave (cfra).

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint, requested or used family care or medical leave (cfra) and as a result was reprimanded, demoted, denied any employment benefit or privilege, denied reasonable accommodation for a disability, other, denied work opportunities or assignments, denied or forced to transfer, denied family care or medical leave (cfra).

**Additional Complaint Details:** On January 29, 2007, Government Employees Insurance Company ("GEICO") hired Erik Stentz ("Stentz") as an Auto Damage Field Manager.  Stentz was unlawfully demoted on or around May 20, 2021.  During Stentz' employment, he suffered discrimination on the basis of his age, disability discrimination, the failure to accommodate his disability, the failure to engage in a good faith interactive process, and retaliation. In addition, GEICO failed to prevent the complained of discrimination and retaliation.  Phillip Gallimore, a Regional Auto Damage Director employed by GEICO, Brian Wright, a Regional Auto Damage Director employed by GEICO, LaDonna Bond, a Human Resources Director employed by GEICO, Martha Furnas, a Regional Vice President employed by GEICO, and James Jones, an Assistant Vice President employed by GEICO, engaged in much of the conduct complained of.

-2-
*Complaint – DFEH No. 202112-15683020*

Date Filed: December 20, 2021

DFEH-ENF 80 RS

VERIFICATION

I, **Anton Swain-Gil**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On December 20, 2021, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Pasadena, CA**

-3-
*Complaint – DFEH No. 202112-15683020*

Date Filed: December 20, 2021

DFEH-ENF 80 RS